UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERWIN GILLIAM,

                Plaintiff,

    -v-

TRUSTEES OF SHEET METAL WORKERS'
NATIONAL PENSION FUND, PLAN A,

                Defendants.

Case No. 03-CV-7421 (KMK)

OPINION AND ORDER

Appearances:

Erwin Gilliam
651 Blvd West Apt #2D
Pelham, NY 10803
Pro Se *Plaintiff*

Stephen Mark Rosenblatt, Esq.
601 North Fairfax Street, Suite 500
Alexandria, VA 22314
*Counsel for Defendant*s

KENNETH M. KARAS, District Judge[1]:

        This is a case challenging the denial of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and is before the Court on Defendants' motion for summary judgment. Plaintiff is disabled and seeks a full pension under an employee benefit plan that he participated in through his work in the sheet-metal industry. Defendants denied Plaintiff's application for pension benefits because he had not met one of the requirements for a disability pension, namely, that he had not worked 435 hours of "covered employment" within the two years immediately preceding the onset of his disability. In their

---

    [1]    On September 3, 2004, this case was randomly reassigned to the undersigned for all purposes.

summary judgment motion, Defendants argue that the Court should uphold their decision and also that the instant lawsuit is untimely because Plaintiff waited longer than the contractually-provided, 90-day limitations period for initiating a lawsuit after Defendants' final decision on Plaintiff's benefits application. The Court has reviewed the parties' submissions, the record, the applicable law, and heard argument on the motion from the parties. Because the Court finds that Defendants' decision to deny benefits was supported by substantial evidence and was not erroneous as a matter of law, the Court grants Defendants' motion for summary judgment.

## I. Background

The material facts are not in dispute.[2] Plaintiff Erwin Gilliam is 53-years old, resides in this district, and was a former worker in the sheet-metal industry. Defendants are the administrators of the Sheet Metal Workers' National Pension Fund, Plan A (the "Fund"), which is a nationwide employee pension benefit plan that provides retirement benefits to eligible sheet-metal workers. The Fund is a defined-benefit plan that provides a specified level of pension benefits that depends on two factors: (i) the hours worked by each participant and (ii) the amount which the participant's employer is obligated to contribute to the Fund for each hour of work performed by the participant.

The uncontested facts show that Mr. Gilliam worked for sheet-metal employers who contributed to the Fund from July 1979 through September 1990, when he was laid off. Since 1990, and through no fault of his own, Mr. Gilliam has done no work in the sheet-metal

---

[2] As required by Local Rule 56.1(a), Defendants submitted a statement of material facts with their motion papers. Defendants also provided Plaintiff with the notice that is due to *pro se* litigants defending summary judgment motions pursuant to Local Rule 56.2. Because Plaintiff did not submit any evidence controverting Defendants' factual assertions, they are deemed to be admitted for purposes of the motion. *See* Local Rule 56.1(b).

industry but has worked in other fields. Based on the sheet-metal work he has done, however, Mr. Gilliam is qualified for 11 years of pension credit, which entitles him to a normal retirement pension at age 65 or an early-retirement pension at age 55.

Mr. Gilliam apparently began suffering from seizures in 1997, and stopped work in September 2000 after he experienced a seizure at work that caused him to fall. The Social Security Administration found that Mr. Gilliam was disabled as of September 15, 2000 and that he was entitled to Social Security disability benefits as of March 2001.

Mr. Gilliam submitted an application to the Fund for a disability pension in or about April 2001. Defendants reviewed Mr. Gilliam's medical records and employment history, ultimately determining that Mr. Gilliam's disability began in September 2000 and that he had not had any covered employment (as defined by the Fund's plan documents) since 1990. Accordingly, the Defendants denied Mr. Gilliam's application because he not did not have any covered employment for at least 435 hours in the 24-month period immediately preceding his disability date, which is a requirement of receiving the Fund's disability pension. However, Defendants did inform Mr. Gilliam that, based on the pension credit he had accumulated with the Fund during his work with participating employers, he was entitled to receive a normal retirement pension at age 65 or an early retirement pension at age 55.

Mr. Gilliam appealed the decision, and the Fund's Appeals Committee considered whether he was entitled to any of the disability benefits offered by the Fund. On December 7, 2001, the Appeals Committee determined that Mr. Gilliam was not because he did not have the requisite 435 hours of covered employment in the 24-months immediately proceeding the onset of his disability, which the Appeals Committee determined was September 15, 2000.

3

The Fund's Board of Trustees has, and at all relevant times had, the sole discretionary authority regarding, among other things, the application and interpretation of the Fund's plan document. The Board consists of an equal number of representatives from labor and management. (Excerpt of Trust Agreement, Art. III § 1(a), attached as Exhibit B to Aff. of Debra Elkins Santi ("Santi Aff.")) The Board delegated discretion to grant or deny any appeal relating to the payment of Fund benefits to the Appeals Committee. The Appeals Committee's decisions on these issues are final and binding. The Fund is managed on a day-to-day basis by Associated Third-Party Administrators, Inc., which is responsible for, among other things, benefit determinations, distribution of benefits, resolution of benefit-eligibility questions, and coordination of benefit appeals, which includes briefing the Appeals Committee on the reasons for benefit decisions.

After additional correspondence between Mr. Gilliam and the Defendants, Mr. Gilliam filed the instant lawsuit on September 22, 2003. On December 30, 2004, Defendants moved for summary judgment. On January 5, 2005, Mr. Gilliam submitted a response in opposition to Defendants' motion. Defendants did not submit a formal reply.

The Court heard oral argument on the motion on February 15, 2005. At oral argument, Mr. Gilliam was given another opportunity to provide any facts that contradicted those submitted by Defendants in support of their summary judgment motion. During this argument, Mr. Gilliam candidly admitted that he had no objection to Defendants' factual proffer that he had not worked in covered employment for at least 435 hours during the 24 months preceding his disability. Instead, Mr. Gilliam insisted that his lack of work in covered employment was not his choice, and he noted that he would be willing, notwithstanding his

4

disability, to make up the 435 hours of work so he could qualify for disability benefits.

## II.  Applicable Standards

### A.  Summary Judgment Standard

Summary judgment may be granted where it is shown that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "The court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998).  Further, because Mr. Gilliam is proceeding *pro se*, the Court liberally construes the Amended Complaint "'to raise the strongest arguments that they suggest.'" *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  "The motion 'will not be defeated merely . . . on the basis of conjecture or surmise.'" *Id.* (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)).

### B.  ERISA Standard

Mr. Gilliam's initial Complaint did not contain allegations based on the ERISA statue, but on September 22, 2003, Chief Judge Michael B. Mukasey construed Mr. Gilliam's

claims as arising under ERISA. (Order filed Sept. 22, 2003, at 1) ERISA provides a beneficiary with a cause of action "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Defendants do not contest the applicability of ERISA to this lawsuit.

The Fund's plan document grants broad discretionary authority to the Defendants to determine, among other things, "(a) the standard of proof required in any case; (b) the application and interpretation of this Plan; (c) entitlement to or amount of a pension; (d) the disability, extent of disability, or non-disability of Plan participants; (e) the crediting of Future or Past Service Credit; and (f) the crediting of Hours of Work and Years of Service." (Amended & Restated Rules and Regulations for the Sheet Metal Workers' National Pension Fund Construction Employees (Plan A) ("2001 Plan Document")[3] § 9.03, attached as Exhibit C to Santi Aff.) "The decisions of the Trustees with respect to any of the foregoing shall be final and binding." (2001 Plan Document § 9.03)

The 2001 Plan Document further provides that a participant who is denied benefits may appeal the denial, and that "[t]he appeal shall be considered by the Trustees or by a person or committee designated by the Trustees." (2001 Plan Document § 9.04) Any decision on the appeal "shall be final." (2001 Plan Document § 9.04) Pursuant to this provision, the Fund's trustees have delegated the authority to consider appeals to the Appeals Committee. (Santi Aff. ¶ 10)

---

[3] According to the Defendants, this is the version of the Fund's plan document that was in effect when Mr. Gilliam appealed the Defendants' denial of his application for pension benefits. (Santi Aff. ¶ 9)

The Court notes that these provisions are similar to those in the version of the plan document that was in effect the last time Mr. Gilliam worked in covered employment. (Rules and Regulations for the Sheet Metal Workers National Pension Fund Construction Employees (Plan A) ("1990 Plan Document") §§ 8.03, 8.04, attached as Exhibit E to Santi Aff.)[4]

Where the written plan documents confer upon a plan "'administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe the terms of the plan,'" a court confronted with a claim for denied benefits under 29 U.S.C. § 1132(a)(1)(B) should "not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Because the Fund's plan document expressly confers such broad discretionary authority on the Fund's trustees, the Court will evaluate the Appeals Committee's decision under the "arbitrary and capricious" standard.

The arbitrary and capricious standard of review is narrow, *see Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003), and a court applying that standard may not overturn a plan administrator's decision to deny benefits unless "it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law,'" *Pagan*,

---

[4] For example, the 1990 Plan Document provides, in language similar to the 2001 Plan Document, that the Trustees have broad discretionary power to determine "(a) the standard of proof required in any case; (b) the application and interpretation of this Plan; (c) entitlement to or amount of pension; (d) the disability, extent of disability, or nondisability of Plan participants; and (e) the crediting of Future or Past Service." (1990 Plan Document § 8.03) "The decisions of the Trustees with respect to any of the foregoing shall be final and binding." (1990 Plan Document § 8.03) The 1990 Plan Document further provides, like the 2001 Plan Document, that an appeal of the denial of benefits "shall be considered by the Trustees or by a person or committee designated by the Trustees." (1990 Plan Document § 8.04) Any decision on the appeal "shall be final." (1990 Plan Document § 8.04)

52 F.3d at 442 (quoting *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)). "Substantial evidence is 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] . . . requires more than a scintilla but less than a preponderance.'" *Celardo*, 318 F.3d at 146 (quoting *Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir. 1995)). A court should not substitute its own judgment for that of the plan administrator as if the court were considering the issue of eligibility for benefits anew. *Pagan*, 52 F.3d at 442; *see also Billinger v. Bell Atl.*, 240 F. Supp. 2d 274, 281 (S.D.N.Y. 2003) ("When the Plan Trustees are given discretion to determine eligibility . . . the court shall review their decisions with a 'strong measure of deference' . . . .") (citations omitted), *aff'd*, 2005 U.S. App. LEXIS 1208 (2d Cir. Jan. 21, 2005).

### III. Discussion

The Fund offered two types of disability pensions when Mr. Gilliam applied for benefits in 2001—a Disability Pension and an Industry-Related Disability Pension. (2001 Plan Document §§ 5.06 & 5.07) The Disability Pension pays a full pension when an eligible participant has become completely disabled, but the Industry-Related Disability Pension pays a reduced pension when an eligible participant is unable to work in the sheet-metal industry, but can hold other types of employment. The amount paid under each benefit differs, but both have similar requirements that are relevant here. The Disability Pension requires that the applicant "worked in Covered Employment for at least 435 hours in the 24 month period that immediately preceded the date that he became permanently and totally disabled as demonstrated by proof of approval for Social Security Disability . . . ." (2001 Plan Document § 5.06(a)(4)) The Industry-Related Disability Pension requires that the applicant "worked in Covered Employment for at

8

least 435 hours in the 24 month period that immediately preceded the date that the Trustees determined he became totally and permanently unable to return to employment in the Sheet Metal Industry." (2001 Plan Document § 5.07(a)(4))[5]

The Court reviews each element of the Defendants' determinations below.

A. The Defendants' Factual Determinations

1. Mr. Gilliam's Work in "Covered Employment"

Defendants informed Mr. Gilliam that they found that his last Covered Employment was in 1990. (Exhibit D to Santi Aff., at A.R. 89)[6] The 2001 Plan Document defines "Covered Employment" as work done for an employer which, pursuant to a collective bargaining agreement with the sheet-metal workers' union, contributes to the Fund. (2001 Plan Document §§ 1.08, 1.11) It is undisputed that Mr. Gilliam's last work for a Contributing Employer, indeed, for any employer in the sheet-metal industry, ceased in September 1990. Indeed, Mr. Gilliam expressly admitted as much during oral argument.[7] Accordingly, the Court finds that the Defendants' determination that Mr. Gilliam's last Covered Employment occurred

---

[5] The Court notes that the requirement for a Disability Pension is the same in the version of the plan that was in effect when Mr. Gilliam last worked in covered employment. (1990 Plan Document § 5.10(a)(4) (requiring work "in Covered Employment for at least 435 hours in the 24 month period that immediately preceded the date that he became permanently and totally disabled")) The 1990 Plan Document does not have a provision for an Industry-Related Disability Pension.

[6] The Administrative Record to Mr. Gilliam's application for benefits is attached as Exhibit D to the Santi Affidavit. The Court will hereinafter refer to the record as "A.R."

[7] Mr. Gilliam notes, and Defendants do not dispute, that his lack of "covered employment" after 1990 was not of his own choosing, and the Court does not doubt that or Mr. Gilliam's wish that circumstances were otherwise. However, the Court finds nothing in the plan documents that makes this fact relevant, or which makes Defendants' denial arbitrary or capricious.

9

in 1990 is supported by substantial evidence.

### 2. Onset of Mr. Gilliam's Disability

Defendants also informed Mr. Gilliam that his disability started in 2000. (A.R. 89) The Social Security Administration found that Mr. Gilliam became disabled on September 15, 2000. (A.R. 27) Mr. Gilliam himself admitted that he first became disabled in September 2000 in his application for disability benefits to the Fund and repeated the same during oral argument. (A.R. 3) Accordingly, the Court finds that Defendants' determination of the onset of Mr. Gilliam's disability to be supported by substantial evidence.

### B. Application of Facts to the Terms of the Plan Documents

Regardless of whether Mr. Gilliam sought a Disability Pension or an Industry-Related Disability Pension, the 2001 Plan Document clearly requires that the applicant worked at least 435 hours in the 24-month period that immediately preceded the date the applicant became disabled. (2001 Plan Document §§ 5.06 & 5.07) There is no dispute here that Mr. Gilliam cannot satisfy this requirement. The last Covered Employment he had was in 1990 and he became disabled in 2000.[8] Accordingly, the Court finds that Defendants' denial of his application is supported by substantial evidence and is therefore not arbitrary and capricious.[9]

---

[8] Although Defendants and the Social Security Administration found Mr. Gilliam's disability began in 2000, the Court is aware that Mr. Gilliam has alleged that he started experiencing seizures in 1997. Even if the Court were to find that Mr. Gilliam became disabled in 1997, however, Mr. Gilliam would still not be entitled to benefits, as he had not worked, by his own admission, 435 hours in the 24-month period prior to 1997.

[9] The Court notes that the Second Circuit has held that courts should take into consideration any conflicts of interest that the administrator may have. *See Pagan*, 52 F.3d at 442. In such a situation, the court of appeals determined that the district court must still apply the "arbitrary and capricious" standard, but must consider the conflict as "a factor in determining
(continued...)

C.  Mr. Gilliam's Response

Mr. Gilliam does not provide any evidence to counter that presented by Defendants.  Nor does Mr. Gilliam provide any significant argument as to why Defendants' motion should be denied.  In a letter he submitted to the Court on December 6, 2004, however, he makes a number of statements, which the Court addresses in turn.

*First*, Mr. Gilliam states that he is entitled to a "full pension" under § 5.05 of the 2001 Plan Document.  (Letter from Mr. Gilliam to the Court of Dec. 6, 2004 ("Dec. 6, 2004 Letter"))  First, the Court notes that § 5.05, which provides for a "Special Early Retirement Pension" for participants who have "attained age 55," does not apply to Mr. Gilliam.  Instead, it applies to participants who have performed at least 3,500 hours of work during the 5 years preceding the application (which Mr. Gilliam concededly cannot meet).  (2001 Plan Document § 5.05(a)(2))  Moreover, the Special Early Retirement Pension does not provide for a full pension, but one that is reduced for participants younger than age 62.  (2001 Plan Document § 5.05(b))  The Court instead construes Mr. Gilliam's request as one for an Early Retirement Pension.  Defendants concede that Mr. Gilliam will be eligible for an Early Retirement Pension once he turns 55—but that pension will pay reduced, not full, benefits.  Mr. Gilliam is 53, however, and

---

[9](...continued)
whether there is an abuse of discretion.'"  *Id*. (quoting *Bruch*, 489 U.S. at 115).  Here, there arguably is a conflict because half the Trustees are labor union representatives, and thus, may also be participants in the Fund.  But even if this is an actual conflict the Court's decision would remain the same, regardless of whether it followed the Second Circuit's holding in *Pagan* and applied the arbitrary and capricious standard (but considered the conflict as a factor in its analysis) or reviewed Defendants' decision *de novo*.  The Court finds that Defendants afforded Mr. Gilliam a full and fair opportunity to appeal the denial of benefits and their decision denying his appeal is supported by the clear language of the plan documents and by the undisputed facts, and there is no evidence that Defendants abused their discretion or were guided by any conflict in reaching their decision.

11

therefore must wait until he turns 55 to obtain this pension.[10] Mr. Gilliam did not challenge this claim at oral argument.

*Second*, Mr. Gilliam states that he does not meet the requirements for the disability pensions because he was not given any Covered Employment after he was laid off in 1990. He states that "[t]ime was never allotted to me at *Local 38* because I was laid off for 3 years." (Dec. 6, 2004 Letter (emphasis in original)) While the Court notes that it is unfortunate that Mr. Gilliam was unable to obtain work in the sheet-metal industry after 1990, the Court is also aware that Defendants' are obligated to follow the express requirements in the plan document for determining eligibility for benefits. *See* 29 U.S.C. § 1104(a)(1)(D) ("[A] fiduciary shall discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan . . . ."). The Fund does not have unlimited resources and could not afford to pay benefits to every participant who asks for them but does not qualify for them. (Aff. of Marc E. Le Blanc, at ¶¶ 8-9 (explaining that if the Fund were liquidated as of January 1, 2004, its assets would cover only approximately 57% of benefits owed))

---

[10] Similarly, the Special Early Retirement Pension also requires that participants be 55 or older to obtain benefits, and thus Mr. Gilliam does not presently qualify for that pension even if he did meet the other requirements discussed above.

IV. Conclusion

For the reasons stated above, Defendants' motion for summary judgment is GRANTED, and judgment will be entered in favor of Defendants.[11] The parties shall bear their own costs and expenses. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:     April ___, 2005
           New York, New York

                                              _____
                                              KENNETH M. KARAS
                                              UNITED STATES DISTRICT JUDGE

---

[11] Because the Court finds that Mr. Gilliam is clearly not entitled to a disability pension under the Fund's plan document, it does not need to reach the Defendants' alternative argument that this action is barred by the limitations period set by the plan document.

13

## IV. Conclusion

For the reasons stated above, Defendants' motion for summary judgment is GRANTED, and judgment will be entered in favor of Defendants.[11] The parties shall bear their own costs and expenses. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:   April 27, 2005
         New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[11] Because the Court finds that Mr. Gilliam is clearly not entitled to a disability pension under the Fund's plan document, it does not need to reach the Defendants' alternative argument that this action is barred by the limitations period set by the plan document.

13